# COUNTY OF WINDHAM,

AT THE

## FEBRUARY TERM, 1882.

PRESENT:

Hon. JONATHAN ROSS,
Hon. H. HENRY POWERS,
Hon. WHEELOCK G. VEAZEY, } ASSISTANT JUDGES.
Hon. JOHN W. ROWELL,

---

## TOWN OF LONDONDERRY v. ALTHINE J. BABBITT.

### Certiorari.  *Insane Husband.*

1. *Certiorari* is the proper remedy to correct any error of the County Court in pro
ceedings under sections 2885, 2886, 2887, of the Revised Laws, whereby a town,
in which an insane husband has a settlement, is compelled to support such hus-
band, if the annual income of his estate is not sufficient to support himself,
family, &c.
2. This statute is no part of the pauper law. The question is not whether the hus-
band is a pauper and could be removed ; but whether his estate is of such a
limited amount that the town is compelled to support him in the asylum.

PETITION for a writ of *certiorari.*  Mrs. Babbitt brought her
petition to the County Court, as stated in the opinion ;  and that.
court TAFT, J., presiding, September Term, 1881, found and or-
dered as follows : That the said Samuel Babbitt, husband of the

petitioner, was an insane person, and should be confined in the asylum ; that his last legal settlement was and is in the town of Londonderry ; that the annual income of his estate, with the earnings of his wife and minor children, is not sufficient for the support of his said wife and minor. children. The court ordered the town of Londonderry to support the said Samuel Babbitt at the insane asylum, from the commencement of the term of court,— in which the petition was heard,—until he was legally discharged, or further order of the court. The court also found the following facts :

Samuel Babbitt, being sane in mind, removed, with his family and effects, from Londonderry, where he had acquired a settlement, to Winhall, on or about May 14, 1874, where he took possession of, and has ever since, up to March 25, 1881, lived on a farm, which had been taken in exchange for a farm in Londonderry. The legal title to the Londonderry farm stood in the name of said Samuel. It was encumbered to the amount of $1200 or more, to Wm. Harris & Son. Harris & Son, pursuant to an arrangement between them and Babbitt and wife, took the Londonderry farm, and conveyed the Winhall farm to the petitioner, Althine J. Babbitt. The Winhall farm was worth from $400 to $600. Samuel Babbitt, from the time he moved to Winhall, was subject to epileptic fits, which increased in frequency until his removal to the asylum. He was able to labor quite a portion of the time, and managed and carried on the business of the farm, when able to do so. During the winter of 1880 and 1881, his fits and insanity increased so that he became dangerous, and incapable of taking care of himself. He made violent attacks upon his wife and children. In this condition of things, Mrs. Babbitt applied to the authorities of Winhall for help and protection.. They took the matter in charge, and after due proceedings had and taken, said Samuel Babbitt was committed to the Vermont Asylum, on the 26th day of March, 1881, where he has since remained, and where it is necessary he should remain. The trustees of the Vermont Asylum required security for the support of the said Samuel Babbitt while therein. Since said Babbitt's confinement in the asylum, the town of Winhall has paid the expenses of his support. The petitioner had no means of paying. She instituted this proceeding at the request of the selectmen and overseer of the poor of Winhall.

Samuel Babbitt was never listed in Winhall for anything except

his poll. The petitioner had for five consecutive years a grand list of $3.75.

Upon the foregoing facts the court made the order referred to, to which the defendant excepted. The petitioner requested the court to order the town of Londonderry to support said Babbitt in the asylum from the date of his commitment. The court declined to extend the order for his support back of the first day of this term, not in the exercise of its discretion, but for want of legal power and jurisdiction so to do, holding as matter of law that the petitioner had no right to such an order, to which the petitioner excepted.

*J. L. Martin,* for the petitioner.

*J. G. Martin* and *J. G. Eddy,* for the defendant.

The opinion of the court was delivered by

POWERS, J. This is a petition for a writ of *certiorari* to bring up the record of the proceedings of the County Court upon the application of Mrs. Babbitt for an order charging this petitioner with the support of her insane husband at the Vermont Asylum for the insane, and upon the production of such record to set aside the orders of the County Court, made in the premises, for errors claimed therein.

The application of Mrs. Babbitt to the County Court for relief, was based upon No. 68 of the Acts of the Legislature of 1874, substantially re-enacted in sections 2885, 2886 and 2887 of the Revised Laws. The proceedings under said sections are not common-law proceedings, and hence *certiorari* is the proper remedy to correct errors therein. It is not the practice of this court to issue the writ of *certiorari* in this class of cases in the first instance, but the court looks into the merits of the petition, and if error in the proceedings of the County Court is apparent, and such error is of a character that demands correction, the court will then order the writ to issue, and thereupon quash the proceedings. Counsel on both sides have argued the case under a misconception of the tenor and purpose of the statute upon which the original application of Mrs. Babbitt was based. This statute

is no part of the pauper law of the State, and the cases cited touching the removability of paupers from one town to another, are not in point.

It is competent for the Legislature to provide for the support of this class of unfortunate persons in such manner as in its wisdom it may determine. It has determined that the town in which the insane person, whose estate is of the limited amount, has his legal settlement, shall sustain the burden of his support at the asylum. It is wholly unimportant whether the insane person could, under the pauper laws, be removed to the place of his settlement. Indeed, only paupers chargeable, or likely to become so, are subjects of removal. In this case the insane person was not a pauper, but a person, with a limited estate, who in time might become a pauper, if his continued support at the asylum were charged upon his estate.

The statute is beneficial to the town of legal settlement, as it vests in such town the income of the insane person's estate, above the support of the wife and children, and enables the town to preserve the property and prevent the family from becoming paupers.

The County Court found all the facts essential to bring this insane person within the statute, and we discover no error in the orders made thereon.

The writ is refused, and the petition dismissed with costs.